## <u>Exhibit 8</u>

## New Warrant Agreement

**THIS WARRANT AND THE SECURITIES PURCHASABLE HEREUNDER HAVE NOT BEEN REGISTERED, QUALIFIED, APPROVED OR DISAPPROVED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT OR SUCH LAWS, AND NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE REGULATORY AUTHORITY HAS PASSED ON OR ENDORSED THE MERITS OF THESE SECURITIES.**

**BROADVIEW NETWORKS HOLDINGS, INC.**

**SERIES A-1 WARRANT**

**[          ], 2012**

This certifies that, for value received, [          ] or its permitted successors or assigns (such Person and such permitted successors and assigns each being the "Holder"), at any time and from time to time on any Business Day on or prior to 5:00 p.m. (New York City time) on the Expiration Date, is entitled to subscribe for the purchase from Broadview Networks Holdings, Inc., a Delaware corporation (including its successors and assigns, the "Company"), [     ] Warrant Stock at a price per Share equal to the Exercise Price; provided that the securities issuable upon any exercise of this Warrant and the Exercise Price shall be adjusted and readjusted from time to time in accordance with Section 4.[1]

IN FURTHERANCE THEREOF, the Company irrevocably undertakes and agrees for the benefit of Holder as follows:

**Section 1.     Definitions and Construction**.  The following terms shall have the meanings ascribed to them as follows (the following definitions being applicable in both singular and plural forms):

(a)     "Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, contract or otherwise.

(b)     "Appraised Value" means at any time the fair market value of any property determined in good faith by the Board of Directors as of a date which is within ten (10) Business Days of the date as of which the determination is to be made.  For purposes hereof, in the case of an Appraised Value of a Share or other security, such good faith determination shall assume the

---

[1]     Discuss desirability to Company of retaining a warrant agent.

17431872.7.BUSINESS

Share or other security is sold in an arm's-length transaction between a willing seller and a willing buyer, without a deduction for liquidity concerns, restrictions on transfer or minority shareholder status and based on the value of the issuer of such security as a going concern.

(c)     "Board of Directors" means the board of directors of the Company.

(d)     "Business Day" means a day that is not a Legal Holiday.

(e)     "Closing Price" means, for any trading day with respect to Shares or other securities, (a) the last reported sale price on such day on the principal national securities exchange (including The Nasdaq Stock Market) on which the Shares or other securities are listed or admitted to trading or, if no such reported sale takes place on any such day, the average of the closing bid and ask prices thereon, or (b) if the Shares or other securities are not listed or admitted to trading on a national securities exchange (including The Nasdaq Stock Market), then the average of the closing bid and ask prices quoted for the Shares or other securities on the relevant date as reported by an established quotation service for over-the-counter securities; provided that if clause (a) applies and no price is reported on the applicable national securities exchange for the applicable trading day, then the price reported on the applicable national securities exchange for the most recent prior trading day shall be deemed to be the price reported for such trading day.

(f)     "Common Stock" means the common stock, $0.01 par value, of the Company.

(g)     "Conversion Consideration" has the meaning set forth in Section 4(c).

(h)     "EE Adjustment Notice" has the meaning set forth in Section 4(j)(i).

(i)     "Equitable Equivalent Event" has the meaning set forth in Section 4(j)(i).

(j)     "Exercise Amount" means for any number of Shares as to which this Warrant is being exercised the product of (i) such number of Shares and (ii) the Exercise Price.

(k)     "Exercise Price" shall initially equal $17.135.  The Exercise Price shall be subject to adjustment from time to time pursuant to Section 4.

(l)     "Expiration Date" means the earlier of (a) [    ], 2020 and (b) the Termination Date to the extent that, as of the Termination Date, this Warrant has an Exercise Price in excess of the value of the securities for which it is then exercisable.

(m)     "Former Number of Shares" has the meaning set forth in Section 4(c).

(n)     "Legal Holiday" means a Saturday, a Sunday or a day on which banking institutions in New York, New York are not required to be open.

(o)     "Liquidity Event" means the occurrence of (a) a transaction or series of related transactions (whether structured as a stock sale, merger, consolidation, reorganization, asset sale

or otherwise) which results in the sale or transfer of more than a majority of the assets of the Company and its subsidiaries (based on value, as determined in good faith by the Board of Directors) or a majority of the capital stock of the Company (other than any transactions among the Company and any of its subsidiaries) to a single person or "group" within the meaning of Section 13 of the Securities Exchange Act of 1934, as amended, or (ii) an initial underwritten public offering of Common Stock with a value in excess of $50 million by the Company pursuant to an effective registration statement filed by the Company with the Securities and Exchange Commission (other than on Forms S-4 or S-8 or successors to such forms) under the Securities Act.

(p)      "Merger Consideration" has the meaning set forth in Section 4(b).

(q)      "Notice of Exercise" has the meaning set forth in Section 2(a).

(r)      "Person" means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

(s)      "Remaining WS Special Dividend" has the meaning set forth in Section 4(d).

(t)      "Securities Act" means the Securities Act of 1933, as amended.

(u)      "Share Reorganization" has the meaning set forth in Section 4(a).

(v)      "Shares" means shares of the Company's authorized Common Stock, and stock of any other class or other consideration into which such authorized Common Stock may hereafter have been changed (including by merger or consolidation).

(w)      "Special Distribution" has the meaning set forth in Section 4(d).

(x)      "Termination Date" has the meaning set forth in Section 4(c).

(y)      "Transfer" means any transfer, sale, assignment or grant of any participation or economic rights in respect thereof or other disposition thereof.

(z)      "Warrant" means this warrant and any successor warrant or warrants issued upon a whole or partial transfer or assignment of any such warrant or successor warrant.

(aa)      "Warrant Assignment" has the meaning set forth in Section 5.

(bb)      "Warrant Stock" means the number of Shares issued or issuable upon exercise of this Warrant as set forth in the introduction hereto, as adjusted from time to time pursuant to Section 4, or in the case of any successor warrants, issuable upon exercise of such successor warrants.

(cc)      "WS Special Dividend" has the meaning set forth in Section 4(d).

17431872.7. BUSINESS                                  3

Unless the context requires otherwise, references to the plural include the singular and to the singular include the plural, references to any gender include any other gender, the part includes the whole, the term "including" is not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Warrant refer to this Warrant as a whole and not to any particular provision of this Warrant. Section, subsection, clause, exhibit and schedule references are to this Warrant, unless otherwise specified. Any reference to this Warrant includes any and all permitted alterations, amendments, changes, extensions, modifications, renewals, or supplements thereto or thereof, as applicable.

**Section 2.** **Exercise of Warrant**.

(a) Exercise and Payment.

(i) The Holder may exercise this Warrant in whole or in part, at any time or from time to time on any Business Day on or prior to the Expiration Date, by delivering to the Company a duly executed notice in the form of Exhibit A (a "Notice of Exercise") and by payment to the Company of the Exercise Price per Share to be received upon such exercise, at the election of the Holder, either (a) by wire or other transfer of immediately available funds to the account of the Company in an amount equal to the Exercise Amount, (b) to the extent a Liquidity Event is scheduled to occur, by receiving from the Company immediately prior to the consummation of such Liquidity Event the number of Shares equal to (i) the number of Shares as to which this Warrant is being exercised minus (ii) the number of Shares having a value, based on the Closing Price on the trading day immediately prior to the date of such exercise (or if there is no such Closing Price, then based on the Appraised Value as of such day), equal to the Exercise Amount, or (c) any combination of the foregoing. The Company acknowledges that the provisions of clause (b) are intended, in part, to ensure that a full or partial exchange of this Warrant pursuant to such clause (b) will qualify as a conversion, within the meaning of paragraph (d)(3)(iii) of Rule 144 under the Securities Act. At the request of any Holder, the Company will accept reasonable modifications to the exchange procedures provided for in this Section in order to accomplish such intent. For all purposes of this Warrant (other than this Section 2(a)), any reference herein to the exercise of this Warrant shall be deemed to include a reference to the exchange of this Warrant into Shares in accordance with the terms of clause (b).

(b) Effectiveness and Delivery. This Warrant shall be deemed to have been exercised and such Shares shall be deemed to have been issued, and the Holder or other Person or Persons designated in such Notice of Exercise shall be deemed for all purposes to have become a holder of record of such Shares, all as of the date that such Notice of Exercise and payment shall have been received by the Company.

(c) Surrender of Warrant. The Holder shall surrender this Warrant to the Company when it delivers the Notice of Exercise, and in the event of a partial exercise of the Warrant, the Company shall execute and deliver to the Holder, at the time the Company issues the Shares

pursuant to such Notice of Exercise, a new Warrant for the unexercised portion of the Warrant, but in all other respects identical to this Warrant.

(d)     Legend.  To the extent the Company issues certificates for Warrant Stock issued upon exercise of this Warrant, such certificate shall bear the following legend, unless at the time of exercise such Warrant Stock is registered under the Securities Act:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED, QUALIFIED, APPROVED OR DISAPPROVED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT OR SUCH LAWS, AND NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE REGULATORY AUTHORITY HAS PASSED ON OR ENDORSED THE MERITS OF THESE SECURITIES."

Any Warrant Stock issued at any time in exchange or substitution for any Warrant Stock bearing such legend (unless at that time such Warrant Stock is registered under the Securities Act) shall also bear such legend unless, in the written opinion of counsel selected by the holder thereof (who may be an employee of such holder), which counsel and opinion shall be reasonably acceptable to the Company, the Warrant Stock represented thereby need no longer be subject to restrictions on resale under the Securities Act.

(e)     Fractional Shares.  The Company shall not be required to issue fractions of Shares upon an exercise of the Warrant.  If any fraction of a Share would, but for this restriction, be issuable upon an exercise of the Warrant, the Company may, in lieu of delivering such fractional Share, pay to the Holder, in cash, an amount equal to the same fraction times the Closing Price on the trading day immediately prior to the date of such exercise (or if there is no such Closing Price, then based on the Appraised Value of such Share as of such day).

(f)     Expenses and Taxes.  The Company shall pay all expenses, taxes and owner charges payable in connection with the preparation, issuance and delivery of any Warrant Stock and any new Warrants, except that if any Warrant Stock or Warrants are to be registered in a name or names other than the name of the Holder, funds sufficient to pay all transfer taxes payable (if any) as a result of such transfer shall be paid by the Holder promptly upon receipt of a written request by the Company for payment.

(g)    Corporate Action.  The Company shall take all corporate action which may be necessary in order that the Company may validly and legally issue fully paid and nonassessable Warrant Stock at the Exercise Price.

(h)    Liquidity Event.  At least fifteen (15) Business Days prior to the scheduled consummation of a Liquidity Event, the Company shall give written notice to the Holder setting forth the date on which such Liquidity Event is expected to become effective and the estimated Appraised Value of each Share assuming the consummation of the Liquidity Event.  Upon receiving such written notice, the Holder shall have ten (10) Business Days to give written notice to the Company of its intention to exercise this Warrant pursuant to Section 2(a)(i)(b), which exercise shall be subject to consummation of the Liquidity Event.  For the avoidance of doubt, a full or partial exchange of this Warrant pursuant to Section 2(a)(i)(b) shall be permitted only in connection with the consummation of a Liquidity Event.

**Section 3.    Validity of Warrant and Issuance of Shares**.  The Company represents and warrants that this Warrant has been duly authorized, is validly issued and constitutes the valid and binding obligation of the Company enforceable against the Company in accordance with its terms.  The Company further represents and warrants that on the date hereof it has duly authorized and reserved, and the Company hereby agrees that it shall at all times until the Expiration Date have duly authorized and reserved, such number of Shares as will be sufficient to permit the exercise in full of this Warrant, and that all such Shares are and will be duly authorized and, when issued upon exercise of this Warrant, shall be validly issued, fully paid and nonassessable, and free and clear of all security interests, claims, liens, equities and other encumbrances.

**Section 4.    Adjustment Provisions**.  The number and character of Shares issuable upon exercise of this Warrant (or any shares of stock or other securities or property at the time receivable or issuable upon exercise of this Warrant) and the Exercise Price, are subject to adjustment upon the occurrence of the following events between the date this Warrant is issued and the date it is exercised (without duplication):

(a)    Adjustment for Stock Splits, Stock Dividends, Recapitalizations, etc.  If the Company shall adjust the number of its outstanding Shares by way of a stock dividend, stock split, reverse stock split, reclassification, recapitalization or other similar event affecting the number of outstanding Shares (or such other stock or securities) (any such event being herein called a "Share Reorganization"), then (i) the Exercise Price of this Warrant shall be adjusted, effective immediately after the effective date of such Share Reorganization, to a price determined by multiplying the Exercise Price of this Warrant in effect immediately prior to such effective date by a fraction, the numerator of which shall be the number of Shares outstanding on such effective date before giving effect to such Share Reorganization and the denominator of which shall be the number of Shares outstanding after giving effect to such Share Reorganization, and (ii) the number of Shares subject to purchase upon exercise of this Warrant shall be adjusted, effective at such time, to a number determined by multiplying the number of Shares subject to purchase immediately before such Share Reorganization by a fraction, the numerator of which

17431872.7. BUSINESS                                    6

shall be the number of Shares outstanding after giving effect to such Share Reorganization and the denominator of which shall be the number of Shares outstanding immediately before giving effect to such Share Reorganization.

(b)     Adjustment for Merger, Consolidation, Sale.  In the case of any consolidation or merger of the Company with another Person or the sale of all or substantially all of its assets to another Person, where the consideration for any such transaction includes interests, shares of stock or other securities (the "Merger Consideration"), then provision shall be made whereby (i) if the value of the Merger Consideration is in excess of the Exercise Price of this Warrant, then the Holder shall thereafter have the right to receive upon exercise of this Warrant (in accordance with and subject to the terms and conditions specified herein) and in lieu of the Warrant Stock otherwise purchasable hereunder, solely such interests, shares of stock or other securities as would (by virtue of such consolidation, merger or sale) have been issued or payable with respect to or in exchange for such Warrant Stock had such consolidation, merger or sale taken place immediately following exercise hereof, and in any such case appropriate provisions shall be made with respect to the rights and interests of the Holder to the extent that the provisions hereof shall thereafter be applicable, as nearly as may be, in relation to any interests, shares of stock, or other securities thereafter deliverable upon exercise of this Warrant and (ii) if this Warrant has an Exercise Price in excess of the value of the Merger Consideration, then this Warrant shall be terminated for no consideration without any further action and shall no longer be exercisable.

(c)     Conversion of Stock.  Except to the extent addressed by Section 4(b), in case all authorized Shares are converted into other securities or property (the "Conversion Consideration"), or the Shares otherwise cease to exist, then at any time after the date on which the Shares are so converted or cease to exist (the "Termination Date") (i) if the value of the Conversion Consideration is in excess of the Exercise Price of this Warrant, then this Warrant shall be terminated without any further action and shall no longer be exercisable and the Holder thereof shall be entitled to receive in lieu of the number of Shares that would have been issuable upon such exercise immediately prior to the Termination Date (the "Former Number of Shares") the number or amount of stock, other securities and/or property that the Holder would have been entitled to receive upon the Termination Date if the Holder had exercised this Warrant with respect to the Former Number of Shares immediately prior to the Termination Date (all subject to further adjustment as provided in this Warrant) and (ii) if this Warrant has an Exercise Price in excess of the value of the Conversion Consideration, then this Warrant shall be terminated for no consideration without any further action and shall no longer be exercisable.

(d)     Special Distributions.  Except to the extent addressed by Section 4(a), (b) or (c), if the Company distributes to holders of Shares any cash or other property (each such event being herein called a "Special Distribution"), then (i) the Exercise Price shall be decreased, effective immediately after the effective date of such Special Distribution, on a dollar-for-dollar basis, by the Appraised Value of the pro-rata portion of such Special Distribution that would have been received in respect of the Warrant Stock had the Warrant Stock been exercised immediately prior to the applicable record date for such Special Distribution (the Warrant Stock's pro rata portion of such Special Distribution, the "WS Special Dividend"); provided, however, that the Exercise

Price shall in no event be decreased to less than $0.01; and (ii) to the extent, if any, that such WS Special Dividend does not result in a reduction in Exercise Price per Share of such Warrant Stock due to the proviso in clause (i) above (the "Remaining WS Special Dividend"), the Company shall, with respect to such Warrant Stock, hold in escrow such Remaining WS Special Dividend in an escrow account that holds only Remaining WS Special Dividends of all holders of the Series A-1 Warrants at [financial institution] pursuant to an escrow agreement in customary form reasonably acceptable to the Company, to be distributed pursuant to the terms of such escrow agreement, (x) to such Holder upon exercise of such Warrant or (y) to the Company two (2) Business Days after the Expiration Date.  Any such Remaining WS Special Dividend may, if the Company so determines, be distributed to holders of Shares without triggering any adjustment pursuant to the terms of Section 4(a), (b), (c) or (d).

(e)      Notice of Adjustments.  The Company shall promptly give written notice of each adjustment or readjustment of the Exercise Price or the number or kind of other securities issuable upon exercise of this Warrant.  The notice shall describe the adjustment or readjustment, show in reasonable detail the facts on which the adjustment or readjustment is based and state the Exercise Price and number or kind of other securities issuable upon exercise of this Warrant.

(f)      Reservation of Stock.  If at any time the number of Shares or other securities issuable upon exercise of this Warrant shall not be sufficient to effect the exercise of this Warrant, the Company shall take such corporate action as may, in the opinion of the Holder's counsel, be necessary to increase its authorized but unissued Shares or other securities issuable upon the exercise of this Warrant as shall be sufficient for such purpose.

(g)      Adjustment of Par Value.  If for any reason (including the operation of the adjustment provisions set forth in this Warrant), the Exercise Price on any date of exercise of this Warrant shall not be lawful and adequate consideration for the issuance of the relevant Warrant Stock, then the Company shall take such steps as are necessary (including amendment of its certificate of incorporation so as to reduce the par value of the Shares) to cause such Exercise Price to be adequate and lawful consideration on the date the payment thereof is due.

(h)      No Avoidance.  The Company shall not, by amendment of its certificate of incorporation or bylaws or through any consolidation, merger, reorganization, transfer of assets, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant.

(i)      Adjustments.  Irrespective of any adjustments in the Exercise Price or the Shares issuable upon exercise of this Warrant that are made pursuant to the terms of this Warrant, the first page of this Warrant may continue to reflect the same Exercise Price per Share and number and kind of Warrant Stock as are set forth in this Warrant on the date hereof.

(j)      Equitable Equivalent.

(i)      In case any event shall occur as to which the provisions of this Section 4 are not strictly applicable but the failure to make any adjustment would not, in the reasonable

opinion of the Holder, fairly protect the purchase rights represented by this Warrant in accordance with the essential intent and principles of this Section 4, then, in each such case (an "Equitable Equivalent Event"), the Holder may notify the Company in writing within ten (10) Business Days of such event that it believes there has been an Equitable Equivalent Event and that an adjustment hereunder is therefore required (an "EE Adjustment Notice").

(ii)     The Board of Directors shall, within ten (10) Business Days after receipt of an EE Adjustment Notice, make a good faith determination of the appropriate adjustment amount (if any), giving effect to the essential intent and principles of this Section 4, and shall give notice of such adjustment to the Holder and each other Holder of the Series A-1 Warrants within ten (10) Business Days of such determination.

Section 5.     **Transfer of Warrant**.  Unless at such time as this Warrant has been registered under the Securities Act, this Warrant may not be transferred except in a transaction exempt from or not subject to the registration requirements of the Securities Act.  The Holder upon any Transfer of this Warrant permitted by the prior sentence must deliver to the Company a duly executed warrant assignment in the form of Exhibit B (the "Warrant Assignment") and upon surrender of this Warrant to the Company, the Company shall execute and deliver a new Warrant with appropriate changes to reflect such assignment, in the name or names of the assignee or assignees specified in the Warrant Assignment or other instrument of assignment and, if the Holder's entire interest is not being transferred or assigned, in the name of the Holder, and upon the Company's execution and delivery of such new Warrant, this Warrant shall promptly be cancelled.  The Holder shall pay any transfer tax imposed in connection with such assignment (if any).  Any transfer or exchange of this Warrant shall be without charge to the Holder (except as provided above with respect to transfer taxes, if any) and any new Warrant issued shall be dated the date hereof.

Section 6.     **Notices.**

(a)     Corporate Actions.  In the event of:

(i)     any taking by the Company of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any distribution (including any Special Distribution), or any right to subscribe for, purchase or otherwise acquire any Shares or any other securities or property, or to receive any other right, or

(ii)     (A) any capital reorganization of the Company, any conversion, reclassification or recapitalization of the capital stock of the Company, any consolidation or merger involving the Company and any other Person or any transfer of all or substantially all the assets of the Company to any other Person, (B) the closing of the Company's first underwritten public offering pursuant to an effective registration statement under the Securities Act (other than pursuant to a registration statement on Form S-4, Form S-8 or any successor forms thereto) or (C) any voluntary or involuntary dissolution, liquidation or winding-up of the Company,

the Company will mail to the Holder a notice specifying (i) the date or expected date on which any such record is to be taken for the purpose of such dividend, distribution or right, and the amount and character of such dividend, distribution or right, (ii) the date or expected date on which any such reorganization, reclassification, recapitalization, consolidation, merger, transfer, dissolution, liquidation or winding-up is to take place and (iii) the time, if any such time is to be fixed, as of which the holders of record of Shares shall be entitled to exchange their Shares for the securities or other property deliverable upon such reorganization, reclassification, recapitalization, consolidation, merger, transfer, dissolution, liquidation or winding-up and a description in reasonable detail of the transaction.  The Company shall cause such notice to be mailed at least twenty (20) Business Days prior to the date therein specified.

**Section 7.**    <u>**Lost, Mutilated or Missing Warrants**</u>.  Upon receipt by the Company of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of any Warrant, and, in the case of loss, theft or destruction, upon receipt of indemnification satisfactory to the Company (in the case of the initial Holder its unsecured, unbonded agreement of indemnity or affidavit of loss shall be sufficient) or, in the case of mutilation, upon surrender and cancellation of the mutilated Warrant, the Company shall execute and deliver a new Warrant of like tenor and representing the right to purchase the same aggregate number of Shares.

**Section 8.**    <u>**Waivers; Amendments**</u>.  Any provision of this Warrant may be amended or waived with (but only with) the written consent of the Company and the Holder.  No failure or delay of the Company or the Holder in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereon or the exercise of any other right or power.  No notice or demand on the Company in any case shall entitle the Company to any other or future notice or demand in similar or other circumstances.  The rights and remedies of the Company and the Holder hereunder are cumulative and not exclusive of any rights or remedies which it would otherwise have.

**Section 9.**    <u>**Miscellaneous**</u>.

(a)    <u>Stockholder Rights</u>.  This Warrant shall not entitle any Holder, prior to the exercise of this Warrant, to any voting or other rights as a stockholder of the Company.

(b)    <u>Successors and Assigns</u>.  All the provisions of this Warrant by or for the benefit of the Company or the Holder shall bind and inure to the benefit of their respective permitted successors and permitted assigns.

(c)    <u>Severability</u>.  In case any one or more of the provisions contained in this Warrant shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.  The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

17431872.7. BUSINESS                                   10

(d)     Equitable Remedies.  Without limiting the rights of the Company and the Holder to pursue all other legal and equitable rights available to such party for the other parties' failure to perform its obligations hereunder, the Company and the Holder each hereto acknowledge and agree that the remedy at law for any failure to perform any obligations hereunder would be inadequate and that each shall be entitled to specific performance, injunctive relief or other equitable remedies in the event of any such failure.

(e)     Notices.  Any notice or other communication required hereunder shall be in writing addressed (i) if to the Company at its address for notices set forth on the signature page hereto (unless otherwise directed in writing by the Company in accordance with the terms hereof) and (ii) if to the Holder at the address of the Holder on file from time to time in the Company's books and records.  Any such notice or other communication may be personally delivered, telecopied, sent by electronic mail, sent by overnight courier service or U.S. mail and shall be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by facsimile or electronic mail, on the date of transmission if transmitted on a Business Day before 5:00 p.m. Eastern time or on the next Business Day if delivered after 5:00 p.m. Eastern time; (c) if delivered by overnight courier, one (1) Business Day after delivery to the courier properly addressed; or (d) if delivered by U.S. mail, three (3) Business Days after deposit with postage prepaid and properly addressed.

(f)     Governing Law; Jurisdiction; Jury Trial Waiver.  This Warrant shall be governed in all respects by the laws of the State of Delaware, without giving effect to the principles of conflicts of laws thereof.  The Company and the Holder hereby irrevocably submit to and accept for itself and its properties, generally and unconditionally, the non-exclusive jurisdiction of the Federal and state courts of the State of Delaware (and of the appropriate appellate courts) with respect to any action seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Warrant or any of the transactions contemplated hereby, and each of the Company and the Holder hereby waives any defense of forum non conveniens and any objection to venue laid therein and agrees to be bound by any judgment rendered thereby arising under, out of, in respect of or in connection with this Warrant. Each of the Company and the Holder further irrevocably accepts for itself and its properties, generally and unconditionally, service of process pursuant to the laws of the State of Delaware and the rules of its courts and hereby acknowledges that such service shall be effective and binding in every respect. Each of the Company and the Holder hereby irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or related to this Warrant or the transactions contemplated hereby.

(g)     Construction; Section Headings.  This Warrant shall be deemed to be jointly drafted by the Company and the Holder and shall not be construed against any person as the drafter hereof.  The section headings used herein are for convenience of reference only and shall not be construed in any way to affect the interpretation of any provisions of this Warrant.

17431872.7. BUSINESS                    11

IN WITNESS WHEREOF, the Company has caused this Warrant to be duly executed by its authorized signatory as of the day and year first above written.

**BROADVIEW NETWORKS HOLDINGS, INC.**

By⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Name:
Title:

Address for Notice

800 Westchester Avenue
Suite N-501
Rye Brook, New York 10573
Attention:  General Counsel
Facsimile: (914) 742-5818

Exhibit A to Warrant
Form of Notice of Exercise

_____,20__

To: Broadview Networks Holdings, Inc.

Reference is made to the Warrant dated [        ], 2012.  Terms defined therein are used herein as therein defined.

The undersigned, pursuant to the provisions set forth in the Warrant, hereby irrevocably elects and agrees to purchase _____ Shares, and makes payment herewith in full therefor at the Exercise Price of $_____in the following form:

_____.

**[**If the number of Shares as to which the Warrant is being exercised is less than all of the Shares purchasable thereunder, the undersigned hereby requests that a new Warrant representing the remaining balance of the Shares be registered in the name of _____, whose address is:_____.**]**

The undersigned hereby represents that it is exercising the Warrant for its own account or the account of an affiliate for investment purposes and not with the view to any sale or distribution and that the Holder will not offer, sell or otherwise dispose of the Warrant or any underlying Warrant Stock in violation of applicable securities laws.

[NAME OF HOLDER]

By_____
Name:
Title:

[ADDRESS OF HOLDER]

17431872.7.BUSINESS

<u>Exhibit B to Warrant</u>

<u>Form of Warrant Assignment</u>

Reference is made to the Warrant dated [        ], 2012, issued by Broadview Networks Holdings, Inc. Terms defined therein are used herein as therein defined.

FOR VALUE RECEIVED _____(the "Assignor") hereby sells, assigns and transfers all of the rights of the Assignor as set forth in such Warrant, with respect to the number of Warrant Stock covered thereby as set forth below, to the Assignee(s) as set forth below:

Number of <u>Warrant Stock</u>

| <u>Name(s) of Assignee(s)</u> | <u>Address(es)</u> | <u>Number of Warrant</u><br><u>Stock</u> |
|---|---|---|
| | | |

All notices to be given by the Company to the Assignor as Holder shall be sent to the Assignee(s) at the above listed address(es), and, if the number of Shares being hereby assigned is less than all of the Shares covered by the Warrant held by the Assignor, then also to the Assignor.

In accordance with Section 5 of the Warrant, the Assignor requests that the Company execute and deliver a new Warrant or Warrants in the name or names of the assignee or assignees, as is appropriate, or, if the number of Shares being hereby assigned is less than all of the Shares covered by the Warrant held by the Assignor, new Warrants in the name or names of the assignee or the assignees, as is appropriate, and in the name of the Assignor.

The undersigned represents that the Assignee has represented to the Assignor that the Assignee is acquiring the Warrant for its own account or the account of an affiliate for investment purposes and not with the view to any sale or distribution, and that the Assignee will not offer, sell or otherwise dispose of the Warrant or the Warrant Stock except under circumstances as will not result in a violation of applicable securities laws.

Dated:_____, 20__

[NAME OF ASSIGNOR]

By_____
Name:
Title:

[ADDRESS OF ASSIGNOR]

17431872.7.BUSINESS

**THIS WARRANT AND THE SECURITIES PURCHASABLE HEREUNDER HAVE NOT BEEN REGISTERED, QUALIFIED, APPROVED OR DISAPPROVED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT OR SUCH LAWS, AND NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE REGULATORY AUTHORITY HAS PASSED ON OR ENDORSED THE MERITS OF THESE SECURITIES.**

**BROADVIEW NETWORKS HOLDINGS, INC.**

**SERIES A-2 WARRANT**

**[          ], 2012**

This certifies that, for value received, [          ] or its permitted successors or assigns (such Person and such permitted successors and assigns each being the "Holder"), at any time and from time to time on any Business Day on or prior to 5:00 p.m. (New York City time) on the Expiration Date, is entitled to subscribe for the purchase from Broadview Networks Holdings, Inc., a Delaware corporation (including its successors and assigns, the "Company"), [      ] Warrant Stock at a price per Share equal to the Exercise Price; provided that the securities issuable upon any exercise of this Warrant and the Exercise Price shall be adjusted and readjusted from time to time in accordance with Section 4.[1]

IN FURTHERANCE THEREOF, the Company irrevocably undertakes and agrees for the benefit of Holder as follows:

**Section 1.    Definitions and Construction**.  The following terms shall have the meanings ascribed to them as follows (the following definitions being applicable in both singular and plural forms):

(a)    "Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, contract or otherwise.

(b)    "Appraised Value" means at any time the fair market value of any property determined in good faith by the Board of Directors as of a date which is within ten (10) Business Days of the date as of which the determination is to be made.  For purposes hereof, in the case of an Appraised Value of a Share or other security, such good faith determination shall assume the

---

[1]    Discuss desirability to Company of retaining a warrant agent.

17477473.3.BUSINESS

8399154.4

Share or other security is sold in an arm's-length transaction between a willing seller and a willing buyer, without a deduction for liquidity concerns, restrictions on transfer or minority shareholder status and based on the value of the issuer of such security as a going concern.

     (c)     "Board of Directors" means the board of directors of the Company.

     (d)     "Business Day" means a day that is not a Legal Holiday.

     (e)     "Closing Price" means, for any trading day with respect to Shares or other securities, (a) the last reported sale price on such day on the principal national securities exchange (including The Nasdaq Stock Market) on which the Shares or other securities are listed or admitted to trading or, if no such reported sale takes place on any such day, the average of the closing bid and ask prices thereon, or (b) if the Shares or other securities are not listed or admitted to trading on a national securities exchange (including The Nasdaq Stock Market), then the average of the closing bid and ask prices quoted for the Shares or other securities on the relevant date as reported by an established quotation service for over-the-counter securities; provided that if clause (a) applies and no price is reported on the applicable national securities exchange for the applicable trading day, then the price reported on the applicable national securities exchange for the most recent prior trading day shall be deemed to be the price reported for such trading day.

     (f)     "Common Stock" means the common stock, $0.01 par value, of the Company.

     (g)     "Conversion Consideration" has the meaning set forth in Section 4(c).

     (h)     "EE Adjustment Notice" has the meaning set forth in Section 4(j)(i).

     (i)     "Effective Time" means 5 pm Eastern Standard Time on the date upon which the Company emerges from Chapter 11 bankruptcy proceedings.

     (j)     "Equitable Equivalent Event" has the meaning set forth in Section 4(j)(i).

     (k)     "Exercise Amount" means for any number of Shares as to which this Warrant is being exercised the product of (i) such number of Shares and (ii) the Exercise Price.

     (l)     "Exercise Price" shall initially equal (a) the equity value equal to an enterprise value of $350,000,000 less (i) $150,000,000 of new senior secured notes less (ii) amounts outstanding under any revolving credit facility and capitalized leases as of the Effective Time plus (iii) cash and cash equivalents on the Company's balance sheet as of the Effective Time plus (iv) the aggregate cash proceeds which would be received by the Company upon the exercise of any Series A-1 Warrant, divided by (b) 11,235,955.  The Exercise Price shall be subject to adjustment from time to time pursuant to Section 4.

17477473.3. BUSINESS          2

8399154.4

(m)    "Expiration Date" means the earlier of (a) [    ], 2020 and (b) the Termination Date to the extent that, as of the Termination Date, this Warrant has an Exercise Price in excess of the value of the securities for which it is then exercisable.

(n)    "Former Number of Shares" has the meaning set forth in Section 4(c).

(o)    "Legal Holiday" means a Saturday, a Sunday or a day on which banking institutions in New York, New York are not required to be open.

(p)    "Liquidity Event" means the occurrence of (a) a transaction or series of related transactions (whether structured as a stock sale, merger, consolidation, reorganization, asset sale or otherwise) which results in the sale or transfer of more than a majority of the assets of the Company and its subsidiaries (based on value, as determined in good faith by the Board of Directors) or a majority of the capital stock of the Company (other than any transactions among the Company and any of its subsidiaries) to a single person or "group" within the meaning of Section 13 of the Securities Exchange Act of 1934, as amended, or (ii) an initial underwritten public offering of Common Stock with a value in excess of $50 million by the Company pursuant to an effective registration statement filed by the Company with the Securities and Exchange Commission (other than on Forms S-4 or S-8 or successors to such forms) under the Securities Act.

(q)    "Merger Consideration" has the meaning set forth in Section 4(b).

(r)    "Notice of Exercise" has the meaning set forth in Section 2(a).

(s)    "Person" means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

(t)    "Remaining WS Special Dividend" has the meaning set forth in Section 4(d).

(u)    "Securities Act" means the Securities Act of 1933, as amended.

(v)    "Share Reorganization" has the meaning set forth in Section 4(a).

(w)    "Shares" means shares of the Company's authorized Common Stock, and stock of any other class or other consideration into which such  authorized Common Stock may hereafter have been changed (including by merger or consolidation).

(x)    "Special Distribution" has the meaning set forth in Section 4(d).

(y)    "Termination Date" has the meaning set forth in Section 4(c).

(z)    "Transfer" means any transfer, sale, assignment or grant of any participation or economic rights in respect thereof or other disposition thereof.

8399154.4

(aa)    "Warrant" means this warrant and any successor warrant or warrants issued upon a whole or partial transfer or assignment of any such warrant or successor warrant.

(bb)    "Warrant Assignment" has the meaning set forth in Section 5.

(cc)    "Warrant Stock" means the number of Shares issued or issuable upon exercise of this Warrant as set forth in the introduction hereto, as adjusted from time to time pursuant to Section 4, or in the case of any successor warrants, issuable upon exercise of such successor warrants.

(dd)    "WS Special Dividend" has the meaning set forth in Section 4(d).


Unless the context requires otherwise, references to the plural include the singular and to the singular include the plural, references to any gender include any other gender, the part includes the whole, the term "including" is not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Warrant refer to this Warrant as a whole and not to any particular provision of this Warrant. Section, subsection, clause, exhibit and schedule references are to this Warrant, unless otherwise specified. Any reference to this Warrant includes any and all permitted alterations, amendments, changes, extensions, modifications, renewals, or supplements thereto or thereof, as applicable.

**Section 2.    Exercise of Warrant**.

(a)    Exercise and Payment.

(i)    The Holder may exercise this Warrant in whole or in part, at any time or from time to time on any Business Day on or prior to the Expiration Date, by delivering to the Company a duly executed notice in the form of Exhibit A (a "Notice of Exercise") and by payment to the Company of the Exercise Price per Share to be received upon such exercise, at the election of the Holder, either (a) by wire or other transfer of immediately available funds to the account of the Company in an amount equal to the Exercise Amount, (b) to the extent a Liquidity Event is scheduled to occur, by receiving from the Company immediately prior to the consummation of such Liquidity Event the number of Shares equal to (i) the number of Shares as to which this Warrant is being exercised minus (ii) the number of Shares having a value, based on the Closing Price on the trading day immediately prior to the date of such exercise (or if there is no such Closing Price, then based on the Appraised Value as of such day), equal to the Exercise Amount, or (c) any combination of the foregoing. The Company acknowledges that the provisions of clause (b) are intended, in part, to ensure that a full or partial exchange of this Warrant pursuant to such clause (b) will qualify as a conversion, within the meaning of paragraph (d)(3)(iii) of Rule 144 under the Securities Act. At the request of any Holder, the Company will accept reasonable modifications to the exchange procedures provided for in this Section in order to accomplish such intent. For all purposes of this Warrant (other than this

8399154.4

Section 2(a)), any reference herein to the exercise of this Warrant shall be deemed to include a reference to the exchange of this Warrant into Shares in accordance with the terms of clause (b).

(b)    Effectiveness and Delivery.  This Warrant shall be deemed to have been exercised and such Shares shall be deemed to have been issued, and the Holder or other Person or Persons designated in such Notice of Exercise shall be deemed for all purposes to have become a holder of record of such Shares, all as of the date that such Notice of Exercise and payment shall have been received by the Company.

(c)    Surrender of Warrant.  The Holder shall surrender this Warrant to the Company when it delivers the Notice of Exercise, and in the event of a partial exercise of the Warrant, the Company shall execute and deliver to the Holder, at the time the Company issues the Shares pursuant to such Notice of Exercise, a new Warrant for the unexercised portion of the Warrant, but in all other respects identical to this Warrant.

(d)    Legend.  To the extent the Company issues certificates for Warrant Stock issued upon exercise of this Warrant, such certificate shall bear the following legend, unless at the time of exercise such Warrant Stock is registered under the Securities Act:

> "THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED, QUALIFIED, APPROVED OR DISAPPROVED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT OR SUCH LAWS, AND NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE REGULATORY AUTHORITY HAS PASSED ON OR ENDORSED THE MERITS OF THESE SECURITIES."

Any Warrant Stock issued at any time in exchange or substitution for any Warrant Stock bearing such legend (unless at that time such Warrant Stock is registered under the Securities Act) shall also bear such legend unless, in the written opinion of counsel selected by the holder thereof (who may be an employee of such holder), which counsel and opinion shall be reasonably acceptable to the Company, the Warrant Stock represented thereby need no longer be subject to restrictions on resale under the Securities Act.

(e)    Fractional Shares.  The Company shall not be required to issue fractions of Shares upon an exercise of the Warrant.  If any fraction of a Share would, but for this restriction, be issuable upon an exercise of the Warrant, the Company may, in lieu of delivering such fractional Share, pay to the Holder, in cash, an amount equal to the same fraction times the Closing Price

17477473.3. BUSINESS                                              5

8399154.4

on the trading day immediately prior to the date of such exercise (or if there is no such Closing Price, then based on the Appraised Value of such Share as of such day).

(f)    Expenses and Taxes.  The Company shall pay all expenses, taxes and owner charges payable in connection with the preparation, issuance and delivery of any Warrant Stock and any new Warrants, except that if any Warrant Stock or Warrants are to be registered in a name or names other than the name of the Holder, funds sufficient to pay all transfer taxes payable (if any) as a result of such transfer shall be paid by the Holder promptly upon receipt of a written request by the Company for payment.

(g)    Corporate Action.  The Company shall take all corporate action which may be necessary in order that the Company may validly and legally issue fully paid and nonassessable Warrant Stock at the Exercise Price.

(h)    Liquidity Event.  At least fifteen (15) Business Days prior to the scheduled consummation of a Liquidity Event, the Company shall give written notice to the Holder setting forth the date on which such Liquidity Event is expected to become effective and the estimated Appraised Value of each Share assuming the consummation of the Liquidity Event.  Upon receiving such written notice, the Holder shall have ten (10) Business Days to give written notice to the Company of its intention to exercise this Warrant pursuant to Section 2(a)(i)(b), which exercise shall be subject to consummation of the Liquidity Event.  For the avoidance of doubt, a full or partial exchange of this Warrant pursuant to Section 2(a)(i)(b) shall be permitted only in connection with the consummation of a Liquidity Event.

**Section 3.    Validity of Warrant and Issuance of Shares**.  The Company represents and warrants that this Warrant has been duly authorized, is validly issued and constitutes the valid and binding obligation of the Company enforceable against the Company in accordance with its terms.  The Company further represents and warrants that on the date hereof it has duly authorized and reserved, and the Company hereby agrees that it shall at all times until the Expiration Date have duly authorized and reserved, such number of Shares as will be sufficient to permit the exercise in full of this Warrant, and that all such Shares are and will be duly authorized and, when issued upon exercise of this Warrant, shall be validly issued, fully paid and nonassessable, and free and clear of all security interests, claims, liens, equities and other encumbrances.

**Section 4.    Adjustment Provisions**.  The number and character of Shares issuable upon exercise of this Warrant (or any shares of stock or other securities or property at the time receivable or issuable upon exercise of this Warrant) and the Exercise Price, are subject to adjustment upon the occurrence of the following events between the date this Warrant is issued and the date it is exercised (without duplication):

(a)    Adjustment for Stock Splits, Stock Dividends, Recapitalizations, etc.  If the Company shall adjust the number of its outstanding Shares by way of a stock dividend, stock split, reverse stock split, reclassification, recapitalization or other similar event affecting the number of outstanding Shares (or such other stock or securities) (any such event being herein

8399154.4

called a "Share Reorganization"), then (i) the Exercise Price of this Warrant shall be adjusted, effective immediately after the effective date of such Share Reorganization, to a price determined by multiplying the Exercise Price of this Warrant in effect immediately prior to such effective date by a fraction, the numerator of which shall be the number of Shares outstanding on such effective date before giving effect to such Share Reorganization and the denominator of which shall be the number of Shares outstanding after giving effect to such Share Reorganization, and (ii) the number of Shares subject to purchase upon exercise of this Warrant shall be adjusted, effective at such time, to a number determined by multiplying the number of Shares subject to purchase immediately before such Share Reorganization by a fraction, the numerator of which shall be the number of Shares outstanding after giving effect to such Share Reorganization and the denominator of which shall be the number of Shares outstanding immediately before giving effect to such Share Reorganization.

(b)    Adjustment for Merger, Consolidation, Sale.  In the case of any consolidation or merger of the Company with another Person or the sale of all or substantially all of its assets to another Person, where the consideration for any such transaction includes interests, shares of stock or other securities (the "Merger Consideration"), then provision shall be made whereby (i) if the value of the Merger Consideration is in excess of the Exercise Price of this Warrant, then the Holder shall thereafter have the right to receive upon exercise of this Warrant (in accordance with and subject to the terms and conditions specified herein) and in lieu of the Warrant Stock otherwise purchasable hereunder, solely such interests, shares of stock or other securities as would (by virtue of such consolidation, merger or sale) have been issued or payable with respect to or in exchange for such Warrant Stock had such consolidation, merger or sale taken place immediately following exercise hereof, and in any such case appropriate provisions shall be made with respect to the rights and interests of the Holder to the extent that the provisions hereof shall thereafter be applicable, as nearly as may be, in relation to any interests, shares of stock, or other securities thereafter deliverable upon exercise of this Warrant and (ii) if this Warrant has an Exercise Price in excess of the value of the Merger Consideration, then this Warrant shall be terminated for no consideration without any further action and shall no longer be exercisable.

(c)    Conversion of Stock.  Except to the extent addressed by Section 4(b), in case all authorized Shares are converted into other securities or property (the "Conversion Consideration"), or the Shares otherwise cease to exist, then at any time after the date on which the Shares are so converted or cease to exist (the "Termination Date") (i) if the value of the Conversion Consideration is in excess of the Exercise Price of this Warrant, then this Warrant shall be terminated without any further action and shall no longer be exercisable and the Holder thereof shall be entitled to receive in lieu of the number of Shares that would have been issuable upon such exercise immediately prior to the Termination Date (the "Former Number of Shares") the number or amount of stock, other securities and/or property that the Holder would have been entitled to receive upon the Termination Date if the Holder had exercised this Warrant with respect to the Former Number of Shares immediately prior to the Termination Date (all subject to further adjustment as provided in this Warrant) and (ii) if this Warrant has an Exercise Price in excess of the value of the Conversion Consideration, then this Warrant shall be terminated for no consideration without any further action and shall no longer be exercisable.

8399154.4

(d)      Special Distributions.  Except to the extent addressed by Section 4(a), (b) or (c), if the Company distributes to holders of Shares any cash or other property (each such event being herein called a "Special Distribution"), then (i) the Exercise Price shall be decreased, effective immediately after the effective date of such Special Distribution, on a dollar-for-dollar basis, by the Appraised Value of the pro-rata portion of such Special Distribution that would have been received in respect of the Warrant Stock had the Warrant Stock been exercised immediately prior to the applicable record date for such Special Distribution (the Warrant Stock's pro rata portion of such Special Distribution, the "WS Special Dividend"); provided, however, that the Exercise Price shall in no event be decreased to less than $0.01; and (ii) to the extent, if any, that such WS Special Dividend does not result in a reduction in Exercise Price per Share of such Warrant Stock due to the proviso in clause (i) above (the "Remaining WS Special Dividend"), the Company shall, with respect to such Warrant Stock, hold in escrow such Remaining WS Special Dividend in an escrow account that holds only Remaining WS Special Dividends of all holders of the Series A-2 Warrants at [financial institution] pursuant to an escrow agreement in customary form reasonably acceptable to the Company, to be distributed pursuant to the terms of such escrow agreement, (x) to such Holder upon exercise of such Warrant or (y) to the Company two (2) Business Days after the Expiration Date.  Any such Remaining WS Special Dividend may, if the Company so determines, be distributed to holders of Shares without triggering any adjustment pursuant to the terms of Section 4(a), (b), (c) or (d).

(e)      Notice of Adjustments.  The Company shall promptly give written notice of each adjustment or readjustment of the Exercise Price or the number or kind of other securities issuable upon exercise of this Warrant.  The notice shall describe the adjustment or readjustment, show in reasonable detail the facts on which the adjustment or readjustment is based and state the Exercise Price and number or kind of other securities issuable upon exercise of this Warrant.

(f)      Reservation of Stock.  If at any time the number of Shares or other securities issuable upon exercise of this Warrant shall not be sufficient to effect the exercise of this Warrant, the Company shall take such corporate action as may, in the opinion of the Holder's counsel, be necessary to increase its authorized but unissued Shares or other securities issuable upon the exercise of this Warrant as shall be sufficient for such purpose.

(g)      Adjustment of Par Value.  If for any reason (including the operation of the adjustment provisions set forth in this Warrant), the Exercise Price on any date of exercise of this Warrant shall not be lawful and adequate consideration for the issuance of the relevant Warrant Stock, then the Company shall take such steps as are necessary (including amendment of its certificate of incorporation so as to reduce the par value of the Shares) to cause such Exercise Price to be adequate and lawful consideration on the date the payment thereof is due.

(h)      No Avoidance.  The Company shall not, by amendment of its certificate of incorporation or bylaws or through any consolidation, merger, reorganization, transfer of assets, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant.

8399154.4

(i)      Adjustments.  Irrespective of any adjustments in the Exercise Price or the Shares issuable upon exercise of this Warrant that are made pursuant to the terms of this Warrant, the first page of this Warrant may continue to reflect the same Exercise Price per Share and number and kind of Warrant Stock as are set forth in this Warrant on the date hereof.

(j)      Equitable Equivalent.

(i)      In case any event shall occur as to which the provisions of this Section 4 are not strictly applicable but the failure to make any adjustment would not, in the reasonable opinion of the Holder, fairly protect the purchase rights represented by this Warrant in accordance with the essential intent and principles of this Section 4, then, in each such case (an "Equitable Equivalent Event"), the Holder may notify the Company in writing within ten (10) Business Days of such event that it believes there has been an Equitable Equivalent Event and that an adjustment hereunder is therefore required (an "EE Adjustment Notice").

(ii)      The Board of Directors shall, within ten (10) Business Days after receipt of an EE Adjustment Notice, make a good faith determination of the appropriate adjustment amount (if any), giving effect to the essential intent and principles of this Section 4, and shall give notice of such adjustment to the Holder and each other Holder of the Series A-2 Warrants within ten (10) Business Days of such determination.

**Section 5.      Transfer of Warrant**.  Unless at such time as this Warrant has been registered under the Securities Act, this Warrant may not be transferred except in a transaction exempt from or not subject to the registration requirements of the Securities Act.  The Holder upon any Transfer of this Warrant permitted by the prior sentence must deliver to the Company a duly executed warrant assignment in the form of Exhibit B (the "Warrant Assignment") and upon surrender of this Warrant to the Company, the Company shall execute and deliver a new Warrant with appropriate changes to reflect such assignment, in the name or names of the assignee or assignees specified in the Warrant Assignment or other instrument of assignment and, if the Holder's entire interest is not being transferred or assigned, in the name of the Holder, and upon the Company's execution and delivery of such new Warrant, this Warrant shall promptly be cancelled.  The Holder shall pay any transfer tax imposed in connection with such assignment (if any).  Any transfer or exchange of this Warrant shall be without charge to the Holder (except as provided above with respect to transfer taxes, if any) and any new Warrant issued shall be dated the date hereof.

**Section 6.      Notices.**

(a)      Corporate Actions.  In the event of:

(i)      any taking by the Company of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any distribution (including any Special Distribution), or any right to subscribe for, purchase or otherwise acquire any Shares or any other securities or property, or to receive any other right, or

8399154.4

(ii)    (A) any capital reorganization of the Company, any conversion, reclassification or recapitalization of the capital stock of the Company, any consolidation or merger involving the Company and any other Person or any transfer of all or substantially all the assets of the Company to any other Person, (B) the closing of the Company's first underwritten public offering pursuant to an effective registration statement under the Securities Act (other than pursuant to a registration statement on Form S-4, Form S-8 or any successor forms thereto) or (C) any voluntary or involuntary dissolution, liquidation or winding-up of the Company,

the Company will mail to the Holder a notice specifying (i) the date or expected date on which any such record is to be taken for the purpose of such dividend, distribution or right, and the amount and character of such dividend, distribution or right, (ii) the date or expected date on which any such reorganization, reclassification, recapitalization, consolidation, merger, transfer, dissolution, liquidation or winding-up is to take place and (iii) the time, if any such time is to be fixed, as of which the holders of record of Shares shall be entitled to exchange their Shares for the securities or other property deliverable upon such reorganization, reclassification, recapitalization, consolidation, merger, transfer, dissolution, liquidation or winding-up and a description in reasonable detail of the transaction.  The Company shall cause such notice to be mailed at least twenty (20) Business Days prior to the date therein specified.

**Section 7.    Lost, Mutilated or Missing Warrants**.  Upon receipt by the Company of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of any Warrant, and, in the case of loss, theft or destruction, upon receipt of indemnification satisfactory to the Company (in the case of the initial Holder its unsecured, unbonded agreement of indemnity or affidavit of loss shall be sufficient) or, in the case of mutilation, upon surrender and cancellation of the mutilated Warrant, the Company shall execute and deliver a new Warrant of like tenor and representing the right to purchase the same aggregate number of Shares.

**Section 8.    Waivers; Amendments**.  Any provision of this Warrant may be amended or waived with (but only with) the written consent of the Company and the Holder.  No failure or delay of the Company or the Holder in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereon or the exercise of any other right or power.  No notice or demand on the Company in any case shall entitle the Company to any other or future notice or demand in similar or other circumstances.  The rights and remedies of the Company and the Holder hereunder are cumulative and not exclusive of any rights or remedies which it would otherwise have.

**Section 9.    Miscellaneous**.

(a)    Stockholder Rights.  This Warrant shall not entitle any Holder, prior to the exercise of this Warrant, to any voting or other rights as a stockholder of the Company.

8399154.4

(b)      Successors and Assigns.  All the provisions of this Warrant by or for the benefit of the Company or the Holder shall bind and inure to the benefit of their respective permitted successors and permitted assigns.

(c)      Severability.  In case any one or more of the provisions contained in this Warrant shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.  The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

(d)      Equitable Remedies.  Without limiting the rights of the Company and the Holder to pursue all other legal and equitable rights available to such party for the other parties' failure to perform its obligations hereunder, the Company and the Holder each hereto acknowledge and agree that the remedy at law for any failure to perform any obligations hereunder would be inadequate and that each shall be entitled to specific performance, injunctive relief or other equitable remedies in the event of any such failure.

(e)      Notices.  Any notice or other communication required hereunder shall be in writing addressed (i) if to the Company at its address for notices set forth on the signature page hereto (unless otherwise directed in writing by the Company in accordance with the terms hereof) and (ii) if to the Holder at the address of the Holder on file from time to time in the Company's books and records.  Any such notice or other communication may be personally delivered, telecopied, sent by electronic mail, sent by overnight courier service or U.S. mail and shall be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by facsimile or electronic mail, on the date of transmission if transmitted on a Business Day before 5:00 p.m. Eastern time or on the next Business Day if delivered after 5:00 p.m. Eastern time; (c) if delivered by overnight courier, one (1) Business Day after delivery to the courier properly addressed; or (d) if delivered by U.S. mail, three (3) Business Days after deposit with postage prepaid and properly addressed.

(f)      Governing Law; Jurisdiction; Jury Trial Waiver.  This Warrant shall be governed in all respects by the laws of the State of Delaware, without giving effect to the principles of conflicts of laws thereof.  The Company and the Holder hereby irrevocably submit to and accept for itself and its properties, generally and unconditionally, the non-exclusive jurisdiction of the Federal and state courts of the State of Delaware (and of the appropriate appellate courts) with respect to any action seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Warrant or any of the transactions contemplated hereby, and each of the Company and the Holder hereby waives any defense of forum non conveniens and any objection to venue laid therein and agrees to be bound by any judgment rendered thereby arising under, out of, in respect of or in connection with this Warrant. Each of the Company and the Holder further irrevocably accepts for itself and its properties, generally and unconditionally, service of process pursuant to the laws of the State of Delaware and the rules of its courts and hereby acknowledges that such service shall be effective and binding in every respect.  Each of the Company and the

8399154.4

Holder hereby irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or related to this Warrant or the transactions contemplated hereby.

(g)    Construction; Section Headings.  This Warrant shall be deemed to be jointly drafted by the Company and the Holder and shall not be construed against any person as the drafter hereof.  The section headings used herein are for convenience of reference only and shall not be construed in any way to affect the interpretation of any provisions of this Warrant.

17477473.3. BUSINESS                    12

IN WITNESS WHEREOF, the Company has caused this Warrant to be duly executed by its authorized signatory as of the day and year first above written.

**BROADVIEW NETWORKS HOLDINGS, INC.**

By_____
Name:
Title:

Address for Notice

800 Westchester Avenue
Suite N-501
Rye Brook, New York 10573
Attention:  General Counsel
Facsimile: (914) 742-5818

Exhibit A to Warrant
Form of Notice of Exercise

_____,20__

To: Broadview Networks Holdings, Inc.

Reference is made to the Warrant dated [          ], 2012.  Terms defined therein are used herein as therein defined.

The undersigned, pursuant to the provisions set forth in the Warrant, hereby irrevocably elects and agrees to purchase _____ Shares, and makes payment herewith in full therefor at the Exercise Price of $_____in the following form:

_____.

[If the number of Shares as to which the Warrant is being exercised is less than all of the Shares purchasable thereunder, the undersigned hereby requests that a new Warrant representing the remaining balance of the Shares be registered in the name of _____, whose address is:_____.]

The undersigned hereby represents that it is exercising the Warrant for its own account or the account of an affiliate for investment purposes and not with the view to any sale or distribution and that the Holder will not offer, sell or otherwise dispose of the Warrant or any underlying Warrant Stock in violation of applicable securities laws.

[NAME OF HOLDER]

By_____
Name:
Title:

[ADDRESS OF HOLDER]

17477473.3.BUSINESS

Exhibit B to Warrant

Form of Warrant Assignment

Reference is made to the Warrant dated [        ], 2012, issued by Broadview Networks Holdings, Inc. Terms defined therein are used herein as therein defined.

FOR VALUE RECEIVED _____(the "Assignor") hereby sells, assigns and transfers all of the rights of the Assignor as set forth in such Warrant, with respect to the number of Warrant Stock covered thereby as set forth below, to the Assignee(s) as set forth below:

Number of Warrant Stock

| Name(s) of Assignee(s) | Address(es) | Number of Warrant Stock |
|---|---|---|
| | | |

All notices to be given by the Company to the Assignor as Holder shall be sent to the Assignee(s) at the above listed address(es), and, if the number of Shares being hereby assigned is less than all of the Shares covered by the Warrant held by the Assignor, then also to the Assignor.

In accordance with Section 5 of the Warrant, the Assignor requests that the Company execute and deliver a new Warrant or Warrants in the name or names of the assignee or assignees, as is appropriate, or, if the number of Shares being hereby assigned is less than all of the Shares covered by the Warrant held by the Assignor, new Warrants in the name or names of the assignee or the assignees, as is appropriate, and in the name of the Assignor.

The undersigned represents that the Assignee has represented to the Assignor that the Assignee is acquiring the Warrant for its own account or the account of an affiliate for investment purposes and not with the view to any sale or distribution, and that the Assignee will not offer, sell or otherwise dispose of the Warrant or the Warrant Stock except under circumstances as will not result in a violation of applicable securities laws.

Dated:_____, 20__

[NAME OF ASSIGNOR]


By_____
Name:
Title:

[ADDRESS OF ASSIGNOR]

1